BROWN WHITE & OSBORN LLP
CALEB E. MASON (Bar No. 246653)
cmason@brownwhitelaw.com
LAURA GLADWIN PAYNE (Bar No. 281078)
lpayne@brownwhitelaw.com
333 South Hope Street, 40th Floor
Los Angeles, California 90071-1406
Telephone: 213. 613.0500
Facsimile: 213.613.0550

Attorneys for Plaintiff
Stephen Handy Aguiar

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHEN HANDY AGUIAR,<br><br>         Plaintiffs,<br><br>v.<br><br>MYSPACE INC., aka LEGACY VISION, LLC,<br><br>         Defendants. | Case No.: 2:14-CV-05520-SJO (PJWx)<br><br>Judge:   Hon. S. James Otero<br>             Hon. Patrick J. Walsh<br><br>**PLAINTIFF STEPHEN H. AGUIAR'S SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT**<br><br>Action filed: July 16, 2014<br><br>Hearing date: None set |

Plaintiff Stephen H. Aguiar ("Mr. Aguiar"), who was pro se throughout this action, has retained undersigned counsel, Brown White & Osborn LLP, as his attorneys, pursuant to this Court's suggestion at the hearing on December 22, 2016. Mr. Aguiar has a pending Motion for Entry of Default Judgment ("Motion") before this Court, which Defendants have not opposed. The Court ordered Mr. Aguiar to file his Reply in support of his motion by February 13, 2017. Mr. Aguiar respectfully submits the following Supplemental Brief in support of his Motion, to address concerns raised by the Court at the December 22, 2016 hearing.

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ............................................ 1
I. INTRODUCTION .................................................................................... 1
II. STATEMENT OF FACTS ....................................................................... 3
    A. Aguiar Sues MySpace and MySpace Responds ................................ 3
    B. The Court Denies MySpace's Motion to Dismiss, But MySpace Never Files Its Answer ................................................................... 4
    C. The December 22, 2016 Hearing ...................................................... 4
    D. Mr. Aguiar Hires Counsel, Who Unravels MySpace's Ownership ...... 7
    E. A Brief Corporate History of MySpace, Its Owners, and Its Lawyers ............................................................................................ 8
    <u>F</u>. Ms. Rheinheimer Files A Declaration Stating that Her Client Was Viant, Inc. ...................................................................................... 11
III. ARGUMENT ............................................................................................ 12
    A. MySpace's Successor Corporate Entities are Liable for Its Debts ..... 12

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Cleveland v. Johnson*,
  209 Cal. App. 4th 1315 (2012) ........................................................................ 12, 13

*McClellan v. Northridge Park Townhome Owners Ass'n, Inc.*,
  89 Cal. App. 4th 746 (2001) ................................................................................. 14

*Obesity Research Inst., LLC v. Fiber Research Int'l, LLC*,
  2016 WL 739795 (S.D. Cal. Feb. 25, 2016) ........................................................... 1

*Ray v. Alad Corp.*,
  19 Cal.3d 22 (1977) ............................................................................................... 12

*Wolf Metals Inc. v. Rand Pac. Sales, Inc.*,
  4 Cal. App. 5th 698 (2016) ............................................................................. 13, 14

**Other Authorities**

53 C. WRIGHT & A. MILLER, FEDERAL PRACTICE & PROCEDURE:
  CIVIL 3d § 1197 (3d ed. 2004) ............................................................................... 1

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

What happened here was—almost—a fraud on the Court. Mr. Aguiar, a pro se prisoner litigating with a typewriter from a cell in Pennsylvania, sued a major media company, MySpace, LLC ("MySpace") alleging that MySpace had violated the Stored Communications Act by providing his private account information to federal officials without a warrant. MySpace moved to dismiss the complaint, and when that failed, it appears that the company made a deliberate choice to try to deceive both Mr. Aguiar and this Court by pretending that it "did not exist."

MySpace's conduct was repeated and deliberate. First, MySpace failed to file the required Corporate Disclosure Statement at the outset of the case. It is doubtful that this failure was accidental, given that the statement is mandatory under the Federal Rule of Civil Procedure 7.1 and this Court's Local Rule 7.1-1, MySpace is a large company and regular litigant in federal court, and its attorneys, at Rheinheimer and Smigliani PC, and LTL Attorneys, LLP, are experienced corporate litigators. As those experienced attorneys know, filing a corporate disclosure statement identifying corporate owners and those with a pecuniary interest in the case is mandatory. As numerous courts have held, "Rule 7.1 should be broadly construed to serve its purpose: full disclosure." *Obesity Research Inst., LLC v. Fiber Research Int'l, LLC*, 2016 WL 739795 (S.D. Cal. Feb. 25, 2016) (citing 53 C. WRIGHT & A. MILLER, FEDERAL PRACTICE & PROCEDURE: CIVIL 3d § 1197 at 78 (3d ed. 2004). If MySpace had filed the Disclosure Statement, Mr. Aguiar and the Court would have known that MySpace's owner was Viant Technologies, Inc. ("Viant")—a fact MySpace concealed throughout the case.

Then, in March 2016, during the pendency of the case, Viant and all its assets, including MySpace, were acquired by Time, Inc. ("Time"). MySpace concealed this fact as well, by failing to file a Supplemental Corporate Disclosure Statement

informing the Court of the change in ownership. On March, 3, 2016, the day the sale closed, Viant CEO Timothy Vanderhook filed papers with the Delaware Secretary of State changing the name of MySpace to "Legacy Vision, LLC." MySpace again failed to disclose the transaction to the Court.

The final step came four days later, on March 7, 2016: a *new* "MySpace, LLC," was registered in Delaware. Its corporate address? 225 Liberty St., New York, New York—the Manhattan corporate headquarters of Time, Inc. MySpace again failed to disclose the transaction to the Court. MySpace and Viant continued to operate throughout the pendency of this case, and continue to operate today.

After March 7, 2016, MySpace continued to litigate in this matter. But when its Motion to Dismiss was denied, MySpace apparently made a deliberate decision to state falsely to the Court that it no longer existed, a claim made repeatedly and expressly to the Court on December 22, 2016 by MySpace's counsel. That statement was false, and could not reasonably have been believed to be true. It took Mr. Aguiar's new attorneys—retained, at the Court's suggestion, in January 2017—a single day of research to uncover all the relevant facts regarding MySpace's ownership, operations, and representation. Those facts are set forth herein.

It appears that MySpace thought it could hoodwink a pro se litigant without research resources, and without an attorney to point out that MySpace had never filed the mandatory Corporate Disclosure statement—which, if filed at the outset of this case as it should have been—would have revealed who owned MySpace, and put the lie to its preposterous claim of nonexistence.

Luckily, the Court saw through the charade. Hearing Transcript, Ex. 1 to the Declaration of Caleb Mason ("Mason Decl."), at 2:18-19 ("This is how four year-olds play hide-and-go seek. When you tell them to go hide and go seek, they cover their eyes, and they think you can't see them, right?"). The Court suggested to Mr. Aguiar that he hire counsel. Mr. Aguiar has now done so, and counsel has unraveled the details of MySpace's concealment and misrepresentations. In this Supplemental Brief,

PLAINTIFF STEPHEN H. AGUIAR'S SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT

Mr. Aguiar now sets out for the Court the facts regarding the corporate history of MySpace, its history of transactions during the pendency of this case, its current and former corporate ownership. And Mr. Aguiar confirms that the law is as this Court stated at the December 22, 2016 hearing: a company cannot evade its legal obligations by changing its name. Still less can a company do so by doing what MySpace did here: changing its name—and then immediately changing it back.

## II.
## STATEMENT OF FACTS

### A. Aguiar Sues MySpace and MySpace Responds

On July 16, 2014, Plaintiff Stephen Aguiar ("Mr. Aguiar") sued MySpace, Inc., for violating the Stored Communications Act by willfully disclosing to the government Mr. Aguiar's private records in the absence of a warrant or other legal authority for such disclosure. Docs. 1-1, 7, 22.

In 2014, Mr. Aguiar's complaint named "MySpace, Inc." On Oct. 21, 2015, the Court ordered service by the Marshals Service, and on November 4, 2015, the Marshals Service served MySpace at its corporate headquarters in Irvine, California. The person who accepted service was "Chris Magill, Director of Legal." MySpace hired counsel, appeared in the case, and moved to dismiss Mr. Aguiar's complaint, Doc. 27. Counsel Jane Rheinheimer appeared for MySpace LLC, which, per MySpace's filing, had been "erroneously sued as MySpace, Inc." Doc. 27, at 1:5.

MySpace never filed a Disclosure Statement, as required by the Federal Rules of Civil Procedure and this Court's Local Rules, identifying its owners, and individuals and entities with a pecuniary interest in the case. (As of this date, more than two-and-one-half years into the litigation, MySpace still has never filed a Disclosure Statement.) MySpace also filed a Response to Plaintiff's Objections to Magistrate Judge's Report and Recommendation on June 29, 2016. Doc. 37. At no time—whether at the outset of the case, or at the time of its acquisition by Time, Inc., or its "name change" in Delaware—did MySpace ever file any Corporate Disclosure Statement.

3

## B. The Court Denies MySpace's Motion to Dismiss, But MySpace Never Files Its Answer

On October 21, 2016, the Court denied MySpace's motion to dismiss. Doc. 41. MySpace never filed an answer after its motion to dismiss was denied. On November 17, 2016, the Court, sua sponte, ordered MySpace to answer or explain its failure to do so. Doc. 43. On November 22, 2016, MySpace filed a document captioned "Disclosure of Why Answer has not been filed." Doc. 44. In that document, MySpace asserted that "MySpace does not exist," and that "the client has directed that counsel stop work on this matter." Doc. 44. The "Disclosure" was accompanied by a motion by MySpace's counsel, Ms. Rheinheimer, to withdraw.

## C. The December 22, 2016 Hearing

Mr. Aguiar then filed a motion for default and to join or substitute Legacy Vision, LLC, as a defendant. Doc. 46. The Court ordered Ms. Rheinheimer to appear, as well as representatives from MySpace and Legacy Vision. Doc. 48. On December 22, 2016, the Court held the hearing. A full transcript of that hearing is attached as Exhibit A to the Declaration of Caleb Mason ("Mason Decl.") filed concurrently herewith. Mr. Aguiar appeared for the hearing, as did Ms. Rheinheimer. Mason Decl. Ex. 1, 1:4-6. Representatives from MySpace and Legacy Vision failed to appear. *Id*. at 1:7-8. The Court asked Ms. Rheinheimer why her clients had not appeared as the Court had ordered, and Ms. Rheinheimer responded that neither entity "exists as an operating entity anymore." *Id*. at 1:10-11. She stated that MySpace had changed its name to "Legacy Vision" and that "[her] understanding is that Legacy Vision LLC currently exists only in name with the secretary of state. There is no management; there is no employees; there is no asset; there is no anything; there is no operating entity there, Your Honor." *Id*. at 14:16.

The Court was skeptical, and pointed out that "somebody signed a name change," and that Ms. Rheinheimer must be communicating with someone in order to make these representations. The exchange between Ms. Rheinheimer and the Court is

Case 2:14-cv-05520-SJO-PJW   Document 67   Filed 02/10/17   Page 8 of 18   Page ID #:401

1  reproduced below:

2

3       THE COURT:      Who are you speaking with?
4       RHEINHEIMER:  I am speaking with counsel of—General Counsel
5        for the former entity.
6       THE COURT:      All right.  And who is that?
7       RHEINHEIMER:  That person's name is James Lee.
8       THE COURT:      And where is he licensed to practice law?
9       RHEINHEIMER:  California.
10      . . .
11      THE COURT:      All right, well what do you think I should do? I
12       ordered MySpace or Legacy to get on the phone, they haven't.
13       They're obviously in contempt of court. I don't know if I should go
14       after Vanderhook or if I should go after Lee.
15      RHEINHEIMER:  I—there-- Your honor, as I understand it, there is
16       no one to speak on behalf of Legacy Vision LLC or on behalf of
17       MySpace. There is-- there is no entity. There is no-- no entity to
18       speak. There is no one to represent that entity.
19      THE COURT:      But they have registered with the state in March.
20       When did they-- When did they stop being an entity?
21      RHEINHEIMER:   I don't know, Your Honor.
22      THE COURT:      Okay.  All right, Mr. Aguiar, what do you want to
23       do?
24      AGUIAR:         I'm kind of out of my area of expertise, your honor.
25       My understanding was that the name changed in March.  Weren't the
26       parties obligated to notify either me or the court?
27      THE COURT:      Of course they were. This is middle school stuff,
28       right?

5

PLAINTIFF STEPHEN H. AGUIAR'S SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT

1     AGUIAR:    Right.

2     THE COURT:    This is how four year olds play hide-and-go seek.

3     When you tell them to go hide and go seek, they cover their eyes, and

4     they think you can't see them, right?

5     AGUIAR:    Right.

6     THE COURT:    So MySpace changed its name to Legacy and

7     they're like, "There's no more MySpace, The Court." Okay, here's

8     what I'm going to do. I'm adding Legacy. I'm going to give you a

9     default, and we are going to get a fault The Court to make Legacy and

10     Myspace, and you can do what you want with it. All right?

*Id.* at 1:17-2:24.

Ms. Rheinheimer asserted several times that "there is no entity to pay me," that she has "no way of getting paid," and that "there is no entity to pay me or Mr. Aguiar," and that "there is no entity that is operating." *Id.* at 5:8-9, 21-22. The Court suggested that "Mr. Lee can file an appearance," and ruled that Ms. Rheinheimer could be relieved as counsel if another attorney substituted in. *Id.* at 6:23-23. Ms. Rheinheimer replied: "No one can substitute in. There's no entity that can hire counsel at this point." *Id.* at 7:2-3.

The Court rejected that assertion, ruling that a corporate entity cannot evade liability by changing its name:

    RHEINHEIMER: No one can substitute in, your honor. There's no
    entity that can hire counsel at this point.

    THE COURT:    Well, call Mr. Vanderhook, okay? You saw- I'm
    sure you looked at Mr. Aguiar's papers and in March of this year of
    2016, Mr. Vanderhook filed for a name change with the secretary of
    state in Delaware. Now, you can chase him down, Mr. Lee can chase
    him down and say, "Hey you guys got me in a bad spot here. You're

1     making me look bad." Timothy Vanderhook, V-A-N-D-E-R-H-O-O-
2     K, title CEO of MySpace. All right? And he changed the name from
3     MySpace, the name of the limited liability company is Legacy Vision
4     LLC. They are now a defendant, and he is not going to be required to
5     serve them because they are the same defendant. They just, you know,
6     I mean, GM can't avoid all the lawsuits by changing their name to
7     MG, and then like, "Sorry, there's no more GM."

    RHEINHEIMER: No, of course not, your honor. It's 9 months later and there is no, there is only a name.

*Id.* at 7:2-14.

### D. Mr. Aguiar Hires Counsel, Who Unravels MySpace's Ownership

Mr. Aguiar has now retained counsel. Undersigned counsel filed his appearance on February 3, 2017, reviewed the docket materials, had a transcript prepared of the December 22, 2016 hearing, and telephoned Ms. Rheinheimer to introduce himself and to get her perspective on the case. Counsel conducted some preliminary research with the goal of answering a few basic questions: (1) Is MySpace, LLC an operating entity? (2) Who owns it? (3) Are there other aliases or names associated with the entity? (4) Who is James Lee? (5) What is his relationship to MySpace? (6) Who is Timothy Vanderhook? (7) What is his relationship with MySpace?

Undersigned counsel quickly found the answers to the above questions, through basic public-records research. The answers revealed a troubling pattern. Several of Ms. Rheinheimer's statements to the Court were contrary to fact (e.g., that MySpace is not an operating entity, and that there is no person or entity able to appear before the Court), or stretch credulity (e.g., that Ms. Rheinheimer has "no idea" who Timothy Vanderhook—her client's CEO—is, or where James Lee—the attorney who retained her services on behalf of Viant, Inc.—practices law). Moreover, Ms. Rheinheimer's factually questionable statements to the Court were made possible by her failure to file the required Corporate Disclosure Statement (which she was not only required to file,

7

but also to supplement), which would have revealed the real ownership of, and pecuniary interests in, MySpace.

On February 3, 2017, undersigned counsel called Ms. Rheinheimer to introduce himself. Mason Decl. ¶ 3. Undersigned counsel told Ms. Rheinheimer that he had begun looking into the case and had uncovered the corporate history of MySpace, including a summary of the facts set forth in detail below, to wit: MySpace's prior ownership by Viant, the sale to Time, the identity of Timothy Vanderhook, and the spurious "name change" and immediate reregistration as "MySpace" in Delaware. *Id.* Ms. Rheinheimer stated that she would not be opposing Mr. Aguiar's motion for default judgment, and that her client did not respond to her emails. *Id.* Undersigned counsel asked whether that contact was "James Lee," as Ms. Rheinheimer had stated in the December 22, 2016 hearing, and what email address she had for him. *Id.* Ms. Rheinheimer confirmed that Mr. Lee's email address was james.lee@ltlattorneys.com. *Id.*

### E. A Brief Corporate History of MySpace, Its Owners, and Its Lawyers

In July 2014, at the outset of this case, MySpace, LLC was owned by Interactive Media Holdings, Inc. ("Interactive") (of which Timothy Vanderhook ("Vanderhook") was CEO). Declaration of Scott Hunter ("Hunter Decl.") ¶¶ 8-9 and Exs. G, H. MySpace never disclosed that fact to Mr. Aguiar or the Court. During the pendency of this case, on January 14, 2015, Interactive changed its name to Viant, Inc. Hunter Decl. ¶¶ 9-10 and Exs. H, I. Despite litigating before this Court for more than two years in this case, MySpace failed to disclose its ownership. *See* Fed. R. Civ. P. 7.1, L.R. 7.1-1 (requiring corporate parties to disclose their owners, as well as individuals or entities with a pecuniary interest and/or potential responsibility for paying judgment).

In February 2016, during the pendency of this case Time, Inc. acquired Viant and all its assets, including MySpace. Hunter Decl. ¶ 11 and Ex. J. On March 3, 2016, Vanderhook filed papers in Delaware changing the name of MySpace, LLC, to Legacy Vision, LLC. *Id.* at Ex. K. Then, four days later, a new LLC was created in Delaware,

named MySpace, LLC, File Number 5982356.  Its corporate address is Time, Inc.'s address: 225 Liberty Street, New York, NY 10281.  *Id*. at Exs. L, M, N.

MySpace, LLC is an ongoing, operating company.  It remains part of the "Viant family of companies," and, through Viant, is a subsidiary of Time, Inc.  Vanderhook has given multiple interviews describing the company's ongoing operations and its relationship with Time, as have Time officials.  *Id*. at Exs. H, J.

The most reasonable inference is that the "name change" of MySpace to Legacy Vision was to provide "cover" for a subsequent assertion (whether to courts, tax authorities, or creditors) that MySpace is no longer an operating entity, or that Legacy Vision "is only a name."  That was Mr. Rheinheimer's assertion to this Court.  Mason Decl., Ex. 1, 1:14-16, 7:13-14.  That assertion is false.  Moreover, it is difficult to ascertain how it could have been made in good faith, given Mr. Rheinheimer's subsequent admission that Viant, Inc. was her client from the outset and was directing this litigation, and that her contact was James Lee.  It is difficult to imagine that Ms. Rheinheimer did not know that Viant, Inc. owned MySpace, that Viant, Inc. was acquired by Time, or that Viant and Time had immediately re-registered "MySpace, LLC" in Delaware.  More broadly, it is impossible to believe that Ms. Rheinheimer did not know that MySpace's operations were ongoing.  (Simply typing "Myspace.com") into a search bar would have confirmed that.)

Here are the facts.  *See* Declaration of Scott Hunter, filed concurrently herewith (identifying research sources and attaching all supporting documents).

(1) MySpace, LLC, is an operating entity.  Hunter Decl. Ex. L (Incorporation records from Delaware Sec'y of State).  Not only is it an *operating* entity, it is an actively *litigating* entity, in multiple district courts around the country.  *Id*. at ¶¶ 8, 15-18 and Exs. G, O, P, Q.

(2) MySpace, LLC, is owned by Viant, Inc., which is owned by Time, Inc.  *Id*. at ¶¶ 11, 17.

(3) At the outset of this lawsuit, Interactive was the parent company of MySpace.

9

PLAINTIFF STEPHEN H. AGUIAR'S SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT

*Id.* at ¶¶ 8-9 and Exs. G, H. Interactive changed its name to Viant on January 14, 2015. *Id.* at ¶ 9 and Ex. H. Viant was acquired by Time, Inc. on or about February 11, 2016. *Id.* at ¶ 11. On March 3, 2016, Timothy Vanderhook filed a "name change" document with the Delaware Secretary of State, changing the name of MySpace, LLC, to Legacy Vision, LLC. *Id.* ¶ 12 and Ex. K.

(4) Four days later, on March 7, 2016, a new company was registered in Delaware called "MySpace, LLC." *Id.* at ¶ 13 and Ex. L. Its registration number is Delaware File Number 5982356. *Id.* It registered with the California Secretary of State's office on April 1, 2016, listing as its address 225 Liberty St., New York, NY 10281, which is Time, Inc.'s corporate address. *Id.* at ¶ 14 and Ex. M. Time's CEO, Joe Ripp, has given media interviews discussing Time's acquisition of MySpace and MySpace's value and ongoing operations. *Id.* at ¶ 23 and Ex. V.

(5) Christopher Magill, the individual who accepted service of this lawsuit for MySpace on November 4, 2015, is, as of February 2017, "the Vice President of Legal Affairs for the Viant family of companies," which are: "Specific Media, MySpace, Vindico [and] Xumo." Mr. Magill is a licensed California attorney, and the address and phone number he reported to the Bar are those of Viant. *Id.* at ¶ 22 and Ex. U (Christopher Magill LinkedIn profile, Christopher Magill California Bar reporting information).

(4) James Lee is the managing partner of LTL Attorneys, LLP, a prominent intellectual property firm with 38 lawyers, and offices in Los Angeles and San Francisco. *Id.* at ¶ 20 and Ex. S (LTL's website pages, including Lee's email), Mason Decl. ¶ 4 (identification by Jane Rheinheimer of Lee's email as the email she used to communicate with her client, Viant, Inc.).

(5) James Lee's firm represents MySpace in other litigation. Hunter Decl. ¶ 21 and Ex. T.

(6) Timothy Vanderhook was, and remains, CEO of MySpace and Viant. *Id.* at

10

PLAINTIFF STEPHEN H. AGUIAR'S SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT

¶¶ 9, 19, 26 and Exs. R, Y.

As noted, the full corporate history with supporting documents is set forth in the Declaration of Scott Hunter, filed concurrently herewith. That history can be summarized as follows:

In sum, MySpace, LLC is an operating company, a subsidiary of Viant, Inc., and Time, Inc. The MySpace that exists today is the same MySpace that Mr. Aguiar sued back in 2014. It operates from the same office. Timothy Vanderhook remains CEO. Christopher Magill remains chief legal officer. LTL Attorneys and James Lee remain its outside counsel. The only difference is that since March 2016, MySpace has been owned by Time, Inc. The "name change" to Legacy Vision was irrelevant to MySpace's liability for the judgment in this case, because it created—as MySpace's counsel told this Court at the December 22, 2016 hearing—an empty shell with no operations, officers or assets, while Viant and "MySpace number 2" continued to operate. An assertion of corporate nonexistence in the face of a lawsuit, made while the company continued to operate, with the same individuals running it, the same corporate offices, the same operating business, and the same revenue stream, is legally questionable at best, and at worst may reasonably be construed as an attempt to mislead creditors and courts in order to avoid debts and legal liabilities.

### F. Ms. Rheinheimer Files A Declaration Stating that Her Client Was Viant, Inc.

On Friday, February 3, 2017, undersigned counsel spoke by phone with MySpace's counsel, Ms. Rheinheimer. Mason Decl. ¶ 3. Undersigned counsel told Ms. Rheinheimer that he had been retained and had researched the history of MySpace. *Id.* Undersigned counsel further informed Ms. Rheinheimer that he had learned that MySpace was owned by Viant, and that Timothy Vanderhook, of whom Ms. Rheinheimer had told the Court she had "no idea" who he was—was the CEO of MySpace and Viant. Mason Decl. Ex. 1 at 1:25-27.

On Monday, February 6, 2017, Ms. Rheinheimer filed a declaration with the

1  Court, Doc. 62, stating—for the first time in two and a half years of litigation—that her
2  client, from the outset, had been Viant. Doc. 62 at 1:26-2:1.
3        Ms. Rheinheimer stated that "corporate counsel for Viant" was directing the
4  litigation, Doc. 62 at 2:6-8, and that she "sent corporate counsel copies of all pleadings,
5  motions, and minute orders of this Court." *Id.* at 2:11-12.
6        Ms. Rheinheimer's declaration still failed to disclose that Viant owned
7  MySpace, that Time, Inc., acquired Viant and all its assets during the pendency of this
8  case, that Timothy Vanderhook was and remains CEO of both Viant and MySpace, and
9  that MySpace, LLC was re-registered in Delaware four days after its "name change" in
10  March 2016, and remains an ongoing, operating company, with the same offices,
11  officers, and personnel.

## III.

## ARGUMENT

### A. <u>MySpace's Successor Corporate Entities are Liable for Its Debts</u>

15        MySpace did not oppose Mr. Aguiar's motion for a default judgment against it.
16  Based on Ms. Rheinheimer's comments at the December 22, 2016 hearing, Mr. Aguiar
17  anticipates that MySpace may try to resist collection by claiming that it "no longer
18  exists" or is an entity "in name only." This assertion is false and misleading as a
19  matter of fact, and unavailing as a matter of law. The "successor" MySpace is liable
20  for this judgment.
21        Under California law, a successor corporation will be held liable for the debts of
22  its predecessor in the following circumstances: "(1) there is an express or implied
23  agreement of assumption, (2) the transaction amounts to a consolidation or merger of
24  the two corporations, (3) the purchasing corporation is a mere continuation of the
25  seller, or (4) the transfer of assets to the purchaser is for the fraudulent purpose of
26  escaping liability for the seller's debts." *Cleveland v. Johnson*, 209 Cal. App. 4th 1315,
27  1327 (2012) (quoting *Ray v. Alad Corp.*, 19 Cal.3d 22, 28 (1977)).
28        As the Court noted in its December 22, 2016 hearing, MySpace cannot hide or

avoid its debts by changing its name.  That basic proposition of black-letter law is true whether the name change was real or (as it appears to have been here) merely a ruse.  In reality, MySpace has been, and remains, an ongoing entity.  During the course of this litigation, MySpace has sold assets multiple times, changed its name, and then established a new limited liability company in a different jurisdiction.  It has litigated cases in multiple jurisdictions.  Its CEO remains the same.  A major media corporation very publicly acquired it and very publicly trumpeted its success.  Its parent, Viant, hired Ms. Rheinheimer and directed this litigation, through its counsel James Lee, managing partner of a prominent Los Angeles law firm.  And Viant continues to operate from the same offices and through the same individual, Christopher Magill, a licensed California attorney.  It is a falsehood to state that MySpace does not exist, is not an operating entity, has no one to speak for it, or any other words to that effect.  Ms. Rheinheimer's recent revelation that MySpace's corporate parent, Viant, was her client throughout the litigation, makes the plausibility of belief in MySpace's nonexistence highly dubious.  A few moments on a computer—or a phone call to the client—prior to the December 22, 2016 hearing would have been all that was required to confirm that Viant and MySpace were both real, operating companies.

However, Mr. Aguiar, a pro se litigant (until this week), was faced with the unseemly spectacle of counsel telling the Court, on the record, that the company he sued is no longer in existence and has no one to speak on its behalf.  This sort of conduct must not stand.  California law is clear that

> [C]orporations cannot escape liability by a mere change of name or a shift of assets when and where it is shown that the new corporation is, in reality, but a continuation of the old.  Especially is this well settled when actual fraud or the rights of creditors are involved, under which circumstances the courts uniformly hold the new corporation liable for the debts of the former corporation.

*Wolf Metals Inc. v. Rand Pac. Sales, Inc.*, 4 Cal. App. 5th 698, 709 (2016).  This theory holds true not just for corporations, but also other entities.  *Cleveland*, 209 Cal. App.

4th at 1329 (stating that "the principles underlying the 'mere continuation' theory of successor liability are not confined to corporations.").

In *Wolf Metals*, the California Court of Appeal held that "when a corporation sells or transfers all of its assets to another corporation constituting its 'mere continuation,' the latter is also liable for the former's debts and liabilities." *Wolf Metals, Inc.*, 4 Cal. App. 5th at 705. The court upheld the trial court's amendment of a default judgment to include a corporation that essentially continued the business of the original corporate defendant. *Id.* at 709-10. The original corporate defendant had filed for bankruptcy and then, without dissolving the original corporation, the president took over its remaining assets and began running the same operation under a new corporation. *Id.* The court ruled that the new corporation was properly added to the default judgment and doing so did not violate the new corporation's due process rights: "when a judgment is entered against a corporation due to its failure to litigate a defense, due process is not contravened by the amendment of the judgment to include a corporation that is the defendant's mere continuation." *Id.* at 710 (citing *McClellan v. Northridge Park Townhome Owners Ass'n, Inc.*, 89 Cal. App. 4th 746, 757 (2001)). Generally, a corporation is held to be a mere continuation of a predecessor corporation, and liable for its debts, if one or both of the following is established: "(1) no adequate consideration was given for the predecessor corporation's assets and made available for meeting the claims of its unsecured creditors; (2) one or more persons were officers, directors, or stockholders of both corporations." *Id.* at 705.

The facts in the instant case are very similar to those in *Wolf Metals*. MySpace has continued its operations (publicly, openly, and profitably) under various different parent companies and names. As discussed above, Timothy Vanderhook continues to run the company, and the company's primary business—its website—is still operating. The newly formed MySpace LLC appears to have the same assets and runs the same business as its predecessors. Through the various sales and names changes, Mr. Vanderhook may be attempting to conceal the true owner and operator of MySpace,

but it is clear that both Legacy Vision LLC and MySpace LLC are liable as continuations of the original MySpace LLC. Ms. Rheinheimer expressly told this Court, Legacy Vision, LLC is an empty shell that exists "in name only"; that is an admission that the entities actually carrying on the operations of the "former" MySpace—namely, MySpace, LLC (Delaware File Number 5982356), Viant, and Time, are liable for the debts of the "former" MySpace.[1]

Additionally, the "successor" MySpace (Delaware File Number 5982356) *has been litigating in this Court for the past 11 months*. Ms. Rheinheimer told this Court that "former" MySpace ceased to exist on March 3, 2016. "Successor" MySpace was incorporated on March 7, 2016. Since that date, Ms. Rheinheimer has continued to appear on behalf of MySpace, LLC, in this Court, filing Docs. 37, Doc. 44, Doc. 45, Doc. 52. **At all times since March 7, 2016, the only MySpace entity in existence has been MySpace LLC, Delaware File Number 5982356**. That entity was represented, that entity had counsel, that entity had the opportunity to be heard, and that entity was heard by the Court.

Accordingly, Mr. Aguiar requests that the Court enter a default judgment naming Legacy Vision LLC and MySpace LLC, Delaware File Number 5982356.

DATED: February 10, 2017

Respectfully submitted,

BROWN WHITE & OSBORN LLP

By: /s *Caleb E. Mason*
CALEB E. MASON
LAURA GLADWIN PAYNE
Attorneys for Plaintiff
Stephen Handy Aguiar

---

[1] *Viant* will also be liable for the judgment, under the "mere continuation" theory, and also because it is an alter ego of the "prior" MySpace, LLC—it was at all times the 100% of MySpace, LLC, and it directed this litigation, as confirmed by the declaration of its attorney. Declaration of Jane Rheinheimer, Doc. 62, at 1:26-2:12 (stating under oath that Viant hired her and directed her activities, and that she kept Viant informed of all developments and served Viant with all filing and orders in this case). If it becomes necessary, Mr. Aguiar will move the Court to amend the judgment to add Viant.

15

PLAINTIFF STEPHEN H. AGUIAR'S SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT