1  BROWN WHITE & OSBORN LLP
   CALEB E. MASON (Bar No. 246653)
2  cmason@brownwhitelaw.com
   LAURA GLADWIN PAYNE (Bar No. 281078)
3  lpayne@brownwhitelaw.com
   333 South Hope Street, 40th Floor
4  Los Angeles, California 90071-1406
   Telephone:  213.613.0500
5  Facsimile:   213.613.0550

6  Attorneys for Plaintiff
   STEPHEN HANDY AGUIAR
7

8              UNITED STATES DISTRICT COURT

9            CENTRAL  DISTRICT OF CALIFORNIA

10

11  STEPHEN HANDY AGUIAR,                Case No.: 2:14-CV-05520-SJO (PJWx)

12              Plaintiffs,               Judge:   Hon. S. James Otero
                                                    Hon. Patrick J. Walsh
13  v.

14  MYSPACE INC., aka LEGACY VISION,     **PLAINTIFF STEPHEN H.
    LLC,                                 AGUIAR'S OPPOSITION TO
15                                        PROPOSED INTERVENOR
              Defendants.                MYSPACE LLC'S EX PARTE
16                                        APPLICATION FOR AN ORDER
                                         TO STAY ENTRY OF A DEFAULT
17                                        JUDGMENT AGAINST
                                         "MYSPACE LLC" AND FOR A
18                                        BRIEFING SCHEDULE RE.
                                         MOTION TO INTERVENE**
19
                                         *Declaration of Scott Hunter filed
20                                        concurrently herewith.*

21                                        Action filed: July 16, 2014

22                                        Hearing date: None set

23

24

25

26

27

28

# TABLE OF CONTENTS

**INTRODUCTION**………………………………………………..……1

**RELEVANT FACTUAL BACKGROUND** ………………………………..…..3

   A. For Eighteen Months, MySpace Litigates

   this Case as "MySpace LLC"………………………………………….3

   B.  MySpace's Attorney States Under Oath that

   She Was Retained by Viant, Inc. (MySpace's Parent Company)

   and that Her Contact Was James Lee, Esq………………..……………..3

   C. MySpace's Attorneys Are at Odds With One Another…………..……...4

   D. MySpace Admits or Does Not Contest the Factual

   Assertions in Mr. Aguiar's Brief…………………………..……………...5

   E. MySpace Is Currently Attempting to Avoid

   a Judgment in Another Case Using Precisely

   the Same "Hide the Ball" Trick It Is Attempting Here………………….7

**ARGUMENT**…………………………………..……………….………..9

   A. MySpace's Brief Never Mentions Its Failure to File

   Corporate Disclosure Statements as Required by Rule 7.1…….………..9

   B.  Emergency Relief is not Warranted Because

   MySpace Created Its Own "Emergency………………………………….11

   C. MySpace Has Unclean Hands, and Has Forfeited

   Any "Successor Liability" Arguments by Intentionally

   and Wrongfully Concealing Its Ownership from the Court………………13

   D.  MySpace Cannot Obtain Relief by Attacking Its Attorney……………..15

   E. MySpace's Arguments Regarding Liability Lack Merit…………………..17

**CONCLUSION** ……………………………………………………………18

1

2

## **TABLE OF AUTHORITIES**

3  *Casey v. Albertson's Inc.*,

4   362 F.3d 1254, 1260 (9th Cir. 2004)…………………………………………………16

5  *ESG Capital Partners LP v. Stratos*,

6    No. 2:13-cv-01639-ODW, 2014 WL 1830903 (C.D. Cal. May 8, 2014)………......13

7  *Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*,

8    No. 13-cv-5693 PSG, 2015 WL 11670155 (C.D. Cal. July 22, 2015)…………......12

9  *Hufnagle v. Rino Int'l Corp.*,

10    No. 10-cv-8695 DDP, 2012 WL 6553743 (C.D. Cal. Dec. 14, 2012)………..…….13

11  *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*,

12   304 F.3d 829 (9th Cir.2002)…………………………………………………………14

13  *Int'l Precision Prod., B.V. v. Staco Sys., Inc.*,

14    No. 13-cv-1831 SJO 2013WL12121547 (C.D. Cal. Dec. 18, 2013)…………….....11

15  *Latshaw v. Trainer Wortham & Co.*,

16   452 F.3d 1097 (9th Cir. 2006)………………………………………………………16

17  *Link v. Wabash R. Co.*,

18   370 U.S. 626 (1962)…………………………………………………………………16

19  *Mission Power Engineering Co. v. Continental Casualty Co.*,

20   883 F. Supp. 488 (C.D. Cal. 1995)……………………………………………..……11

21  *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd*,

22   507 U.S. 380 (1993)………………….…….…………….…………………………..16

23  *Precision Instr. Mfg. Co. v. Auto. Maint. Mach. Co.*,

24   324 U.S. 806 (1945)…………………………………………………………………14

25  *Wells Fargo & Co. v. Stagecoach Properties, Inc.*,

26   685 F.2d 302 (9th Cir.1982)………………………………..………………………..14

27

28

Plaintiff Stephen H. Aguiar ("Mr. Aguiar") opposes MySpace LLC's ex parte application on the grounds that it fails to show that emergency relief is warranted or any basis for intervention.

# I.

# **INTRODUCTION**

Mr. Aguiar opened his Supplemental Brief as follows: "What happened here was—almost—a fraud on the Court." MySpace LLC's ex parte application confirms that Mr. Aguiar was correct. MySpace LLC ("MySpace 1" (pre-March 3, 2016), "MySpace 2" (post March 7, 2016)) and its counsel (collectively "MySpace") made deliberate strategic decisions to conceal from Mr. Aguiar and the Court its corporate ownership and changes therein; not to file an answer in this lawsuit; and not to oppose default. MySpace planned for Mr. Aguiar to obtain a default judgment, and then, when he came to collect, MySpace planned to pull away the football by claiming that "MySpace LLC" is not really "MySpace LLC."

MySpace intended to claim that the "MySpace LLC" Mr. Aguiar sued ceased to exist a year ago, and that the "MySpace LLC" currently registered in Delaware and California and doing business as a profitable subsidiary of Viant and Time (with the same office, the same officers, the same website, and the same operations) "has no relationship" with the "MySpace LLC" Mr. Aguiar sued.

We know that this was a deliberate strategy both because MySpace admits as much in its brief, and because MySpace is presently employing this precise gambit in at least one other case in which a judgment creditor is attempting to collect on a judgment against MySpace. The difference is that here, MySpace got caught before the entry of the judgment.

MySpace's application is striking in the lack of respect it evinces for the norms and rules of civil procedure. In ten pages of argument, it *never mentions* the fact that

it violated FRCP 7.1 and L.R. 7.1-1 by failing to file corporate disclosure statements. It blithely admits that it made a deliberate strategic decision to withhold from the Court and Mr. Aguiar the required disclosures about its corporate ownership in order to prevent Mr. Aguiar from learning of, and potentially asserting claims against, its parent and successor entities.

MySpace intentionally violated the rules and misled Mr. Aguiar and the Court for eight months, by concealing its true ownership and litigating on behalf of an entity it now claims had ceased to exist.  Now that it has gotten caught, it demands that the Court grant it emergency relief, reopen the case, and allow it to make the arguments about successor liability that admits it *deliberately chose not to make* almost a year ago.

MySpace admits (as it must) that it had full knowledge of this case and deliberately chose its course.  There is nothing that MySpace wants to argue now that it could not have argued in March 2016, or at any time thereafter.  Indeed, the Court ordered MySpace to send a representative to appear at the December 22, 2016 hearing to appear in addition to Ms. Rheinheimer.  That would have a been a good time to explain to the Court whatever it thought it necessary to explain about its corporate history.  But MySpace chose to ignore the order.  In the face of MySpace's open display of disdain for this Court and the rules of civil procedure, MySpace's cry of "emergency" is frivolous, and is the height of chutzpah.[1]

---

[1] The usual legal illustration here is the defendant who kills his parents and asks for mercy because he's an orphan. At the corporate level, the metaphor is remarkably apt: in the middle of ongoing litigation, and having failed to disclose its corporate parents, MySpace "killed off" MySpace 1: it sucked out the company's assets and renamed the company, and immediately created a new company with the same name, operating the same business, run by the same people, and owned by the same parent.  MySpace and its counsel deliberately chose not to reveal any of that, in hopes of avoiding having to defend against claims of successor liability. Now, they cry "prejudice" because they never made those successor liability arguments.

PLAINTIFF STEPHEN H. AGUIAR'S OPPOSITION TO MYSPACE LLC'S EX PARTE APPLICATION

## II.

## RELEVANT FACTUAL BACKGROUND

The factual background is set forth in detail in Mr. Aguiar's Supplemental Brief in Support of Motion for Default Judgment, Doc. 67 at 1-12.  Below, Mr. Aguiar sets out the facts most pertinent to MySpace's ex parte application.

### A. For Eighteen Months, MySpace Litigates this Case as "MySpace LLC"

In Mr. Aguiar's operative Second Amended Complaint, he named "MySpace, Inc." as a Defendant.  Doc. 22.  On November 24, 2015, attorney Jane Rheinheimer, Esq. appeared for Defendant "MySpace LLC."  She stated that the defendant company had been "erroneously" identified as "MySpace, Inc." and that its correct name is "MySpace, LLC."  Doc. 27, at 1:5 ("Attorneys for Defendant MYSPACE LLC erroneously sued and served as MYSPACE INC.").  MySpace litigated this case thereafter in this Court under the name "MySpace LLC," *see*, *e.g*., Doc. 37.  In the Court's Minute Order of December 22, 2016, the Court ordered that default be entered against "MySpace LLC and Legacy Vision LLC."  Doc. 50 ("The Court will issue a separate order granting Plaintiff's request for entry of default against Myspace LLC and Legacy Vision LLC.").  At all times since March 7, 2016, the only legal entity in existence named "MySpace LLC" was MySpace 2, the company with Delaware Registration Number 5982356.

### B. MySpace's Attorney States Under Oath that She Was Retained by Viant, Inc. (MySpace's Parent Company) and that Her Contact Was James Lee, Esq.

As set forth in Mr. Aguiar's Supplemental Brief, Doc. 67 at 7-11, when Mr. Aguiar retained counsel at the Court's suggestion, counsel quickly unraveled the ownership history of MySpace and learned that MySpace had not been forthcoming with the Court.  Counsel contacted Ms. Rheinheimer on Friday, February 3, 2017, and outlined what he had found, including the facts that MySpace's corporate owners were Viant and then Time, and that James Lee (whom Ms. Rheinheimer had told the Court

was the "general counsel for the former entity) was the attorney for both.  Doc. 67 at

11-12.  On Monday, February 6, 2017, Ms. Rheinheimer filed a declaration, Doc. 62,

revealing—for the first time in two years of litigation—that Viant had actually been

the entity that hired her and directed the litigation.  Doc. 62 at ¶¶ 2, 4.  She declared

that she had sent "corporate counsel for Viant" "all pleadings, motions, and minute

orders."  She declared that corporate counsel for Viant Inc. told her on September 16,

2016, that her "services would no longer be required in connection with this matter."

She declared that after that directive, she made ten attempts to contact that attorney,

James Lee, Esq., but he never responded.  (Ms. Rheinheimer told the Court at the

December 22, 2016 hearing that her client's only contact for her was James Lee.  And

as set forth in the Declaration of Caleb Mason, Doc. 67-1 at 8:8-14, Ms. Rheinheimer

confirmed to undersigned counsel that James Lee of LTL Attorneys was the individual

in question.  That is the same James Lee who signed MySpace 2's ex parte

application, Doc. 68 at 10:21.)

    In other words, it is the sworn statement of MySpace's attorney that James Lee,

attorney for Viant, Inc., hired her to represent MySpace in November 2015, and

directed her to stop working on the case in September 2016.  It is therefore absurd

and, frankly, outrageous for Mr. Lee to now file an ex parte request for "emergency"

relief from default when *he is the person* who told Ms. Rheinheimer not to file an

answer.[2]

### C. MySpace's Attorneys Are at Odds With One Another

    In her Declaration, Ms. Rheinheimer declares that Mr. Lee told her to stop

working, then failed to responded to ten successive written communications from her,

seeking direction in the case.  Doc. 62 at ¶ 3.  Ms. Rheinheimer offers to "appear in

camera before this Court and outside the presence of Plaintiff's counsel, to provide

---

[2] Doc. 62 at ¶ 3 ("I was advised by the previous corporate counsel for Viant, Inc., on September 16, 2016, that my firm's services would no longer be required in connection with this matter.").

BROWN WHITE & OSBORN
ATTORNEYS

1 additional information as required." *Id.* ¶ 3.[3]

2 In its ex parte application, Doc. 68 6:23-26 and 7:25-28, MySpace accuses its

3 attorney Ms. Rheinheimer of providing "less than accurate" information to the Court.

4 In its email communications, it refers to "misstatements made by you and Ms.

5 Rheinheimer." Doc. 68-1 at 7.

6 As detailed further herein, neither MySpace's brief, nor its correspondence,

7 actually identified any specific factual inaccuracies in Mr. Aguiar's brief, however.

8 The only specific factual contention MySpace makes is in the Declaration of Mr. Lee,

9 in which he states that "neither myself nor my firm have ever been retained or acted as

10 general counsel for MySpace LLC, Time, Inc., or any other Viant-related company."

11 Doc. 68-1 at ¶ 2. However, in the same paragraph, Mr. Lee admits that "at various

12 times, myself and my firm have been retained as outside counsel for these entities."

13 *Id.* Mr. Lee does not explain how it came to be that Ms. Rheinheimer, the attorney he

14 hired and directed in her representation of MySpace, came to believe that he was the

15 general counsel of MySpace.[4]

16 **D. MySpace Admits or Does Not Contest the Factual Assertions in Mr.**

17 **Aguiar's Brief**

18 MySpace's brief is striking in the extent to which it confirms—through overt

19 admission or silence—the factual assertions in Mr. Aguiar's Supplemental Brief. All

20 of the following factual assertions—facts highly material to the issues raised in the

21 Supplemental Brief and in MySpace's ex parte application—are either admitted

22 (explicitly or implicitly) or simply never addressed (and thus uncontested). To wit:

23

24 [3] To the extent that MySpace, through either or Ms. Rheinheimer or Mr. Lee, seeks to
support legal claims for relief by offering to provide information about

25 communications between them in camera, Mr. Aguiar objects. Ms. Rheinheimer has
given the Court sworn testimony that Mr. Lee expressly told her to stop work. If Mr.

26 Lee wishes to dispute that sworn testimony in an attempt to support MySpace's legal
claim for relief from default, then Mr. Aguiar is entitled to see the communications at

27 issue, and be party to any testimony from either attorney.

28 [4] It is notable, in this regard, that Ms. Rheinheimer told this Court that she did not
where Mr. Lee worked. Doc. 67-1 at 1:23-24.

BROWN WHITE & OSBORN
ATTORNEYS

- MySpace never addresses its failure to file the corporate disclosure statements required by Rule 7.1, which would have informed Mr. Aguiar and the Court of its ownership and changes thereto.

- MySpace 2 admits it deliberately chose not to inform Mr. Aguiar or the Court of the March 2016 transactions under which it changed ownership and name. Doc. 68 at 6:14-20.

- MySpace 2 admits that its decision not to disclose the March 2016 transactions was a deliberate strategic decision, made specifically in order to prevent Plaintiff from seeking to name MySpace 2 as a defendant.  Doc. 68 at 6:14-20.[5]

- MySpace 2 admits that it had notice of every development in the case—indeed that it was "monitor[ing] the Court's docket."  Doc. 62 at 2:11-12; Doc. 68 at 6:19.

- MySpace 2 does not deny that since March 7, 2016, it has been the only entity in existence called "MySpace LLC."

- MySpace 2 does not deny that it failed to file any corporate disclosure statements.

- MySpace 2 admits that it continued litigating as "MySpace LLC" after March 7, 2016.  Doc. 7:25-28.

- MySpace 2 does not deny that Viant was MySpace's owner, and Time is Viant's and MySpace's owner.  Doc. 68 at 6:6-10.

- MySpace 2 does not deny that Viant and James Lee hired Jane Rheinheimer.

---

[5] Mr. Aguiar wishes to emphasize how significant this admission is: "Proposed Intervenor was thus caught in a Catch-22.  If it appeared in this action on behalf of Legacy Vision it would be unable to argue it was not a successor to Legacy Vision's liability in this matter." Doc. 68 at 6:14-16.  MySpace, in other words, admits that the reason it failed to make the required disclosures was that it believed that if it did, Mr. Aguiar would have a winning argument for successor liability against MySpace 2. This is an outright admission that MySpace deliberately violated the rules and concealed information it was required to disclose, because it hoped to gain an unfair strategic advantage by so doing.

- MySpace 2 does not deny that James Lee directed the litigation actions of Ms. Rheinheimer and of MySpace 1 and 2.  Doc. 62 at 1:26-27, 2:6-8.

- MySpace 2 does not deny that it deliberately chose not to file an answer, and not to appear at the December, 22 hearing.

- MySpace 2 does not deny that its assets, officers, and operations are the same as those of MySpace 1.

- MySpace 2 does not deny that was legally obligated to file corporate disclosure statements.

- MySpace 2 does not deny that on March 3, 2016, it was legally obligated to inform Plaintiff and the Court of its sale to Time, Inc.

**E**. **MySpace Is Currently Attempting to Avoid a Judgment in Another Case Using Precisely the Same "Hide the Ball" Trick It Is Attempting Here**

In its Supplemental Brief, Mr. Aguiar set forth the results of his research into MySpace's corporate history, and asserted that MySpace appeared to be engaged in a "hide the ball" trick, as the Court suggested at the December 22, 2016 hearing. Specifically, Mr. Aguiar wrote, it appeared that MySpace had deliberately failed to inform Mr. Aguiar (and likely other litigants and/or creditors) of the March 3-7, 2016 transactions (in which MySpace 1 was acquired by Time, Inc., drained of its assets, and renamed Legacy Vision; and then, four days later, MySpace 2 was created by Time, Inc.).  MySpace's purpose was to let those litigants or creditors pursue judgments or debts against "MySpace LLC," and then telling those creditors: "Sorry, MySpace LLC no longer exists.  It became Legacy Vision a year ago, and Legacy Vision has no operations, employees or assets."

It was readily apparent from MySpace's conduct in this case (failing to answer, appear, or oppose default) that that was its intent.  And MySpace's identical conduct—through the same attorney, Mr. Lee—in another pending case proves that the "hide the ball" trick is its deliberate strategy.

In *Altitude Digital Partners Ins. v. MySpace LLC*, No. 2015-cv-34089 (Denver,

CO Dist. Ct.), the plaintiff, a company with whom MySpace had contracted, won a $655,000 judgment against MySpace.  Declaration of Scott Hunter ("Hunter Decl."), Ex. D, at p.43.   The Court entered judgment on July 25, 2016.  *Id*.  MySpace did not appeal, and so the plaintiff ("Altitude") filed a suit in Orange County Superior Court (where MySpace's corporate offices are located) to enforce the judgment.  *Id*. Ex. B at p. 7.

On September 21, 2016, Altitude's counsel received a letter from James Lee that has a familiar ring:

> This letter serves as notice to you and Altitude that the Myspace LLC listed in the Colorado judgment is not the same entity that currently operates under the name Myspace LLC in California.  In March 2016, the Myspace LLC that is named in the Colorado Judgment changed its name to Legacy Vision LLC.  Shortly thereafter, the current Myspace LLC formed as a separate and distinct entity from Legacy Vision LLC and utilized the Myspace LLC name.  There is no relationship between these entities other than the common name, Myspace LLC.

Sep. 21, 2016 letter from James Lee to Tarifa Laddon, Hunter Decl. Ex. E at p.54.

The last sentence of the above quote bears repeating: "There is no relationship between these entities other than the common name, Myspace LLC."  That statement is flatly, demonstrably false, and could not have been reasonably believed to be true.  Mr. Lee's letter omits the fact that the *same company* (Time, Inc.) that bought MySpace 1, took its assets, and changed its name to Legacy Vision, also created MySpace 2 four days later.  Mr. Lee's letter omits the fact that MySpace 2 retained the same CEO (Timothy Vanderhook), the same officers, office, attorneys, and operations as MySpace 1.  Mr. Lee's assertion to counsel in the *Altitude* case that there is "no relationship" between MySpace 1 and 2 other than the name, appears to be a purposeful attempt to mislead opposing counsel.

Indeed, in the *Altitude* case, MySpace is presently seeking to amend Altitude's judgment so that it runs against Legacy Vision, LLC—a "company" that MySpace, through Mr. Lee, has just told this Court has never had any "employees [or] assets,"

Doc. 68 at 6:8-11, and is "in default," *id*. at 11-12.  "Legacy Vision," in other words, was deliberately created by MySpace and its attorneys as an empty vessel for the purpose of allowing MySpace to try to avoid liability for judgments against it. Myspace and its attorneys may have congratulated themselves on their cleverness at the time they conceived their strategy, but the law does not countenance or reward such duplicity.

**III.**

**ARGUMENT**

**A. MySpace's Brief Never Mentions Its Failure to File Corporate Disclosure Statements as Required by Rule 7.1**

Perhaps the most striking feature of MySpace's brief is the complete absence of any acknowledgement—let alone defense—of its failure to disclose its corporate owners at any time in this case.  Mr. Aguiar's Supplemental Brief emphasized that MySpace's entire attempt to "hide the ball" and evade liability was predicated on its failure to file the required disclosure statements under FRCP 7.1 and L.R. 7.1-1 (and that this strategy would only be possible against a pro se plaintiff who wouldn't know to demand those disclosures). Doc. 67 at 1:11-25, 2:18-22, 3:21-28, 7:26-8:2, 8:19-24.

Yet, incredibly, MySpace's brief never even mentions Rule 7.1; it never addresses MySpace's failure to file its disclosure statements, let alone explains or defends that failure.  This silence is particularly troubling given that MySpace asserts that it must file this application for emergency relief because—according to MySpace—it had no opportunity to make arguments about successor liability because Mr. Aguiar never sued MySpace 2 (or Viant, or Time).  As is true of several of MySpace's other arguments, the chutzpah of this argument is astonishing.  The reason Mr. Aguiar didn't add Viant, or Time, or MySpace 2 as defendants is that *MySpace never disclosed them*.

MySpace's complaint that it had no opportunity to join the case, Doc. 68 at 6:14-20, ring particularly hollow.  For example, MySpace claims that after MySpace 1

9

changed its name to Legacy Vision, "at that point Legacy Vision no longer had any employees or the ability to represent itself in this action."  Doc. 68 at 6:10-11.  As an excuse for not informing the Court of the name change for the next eight months, MySpace's contention is laughable.  A corporate party in federal litigation has an ongoing obligation to inform the court of its ownership and of changes therein.  FRCP 7.1.  MySpace is apparently now suggesting to this Court that during the middle of a federal lawsuit, a corporate party may permissibly divest itself of all of its assets, change its name, never tell the Court or the opposing party what it is doing, and then simply ignore the lawsuit entirely because it "no longer had any employees or the ability to represent itself in this action."  Doc. 6:10-13.  The Court's analogy to a four-year-old covering his own eyes and pretending he's invisible is apt.

How could MySpace defend this behavior in a hearing before the Court?  What could it say?  "Well, Your Honor, we just couldn't tell the plaintiff or the Court that we changed our company name and got rid of all its assets and employees, because, you know, once we did all that, we didn't have any employees or assets left."  Here are two questions in response.  Mr. Aguiar would be very interested to hear how MySpace answers them: (1) "Well, counsel, why didn't you tell the plaintiff and the Court *beforehand*?"; (2) "Well, counsel, surely Legacy Vision was owned by someone, right?  It was incorporated by someone, right?"  (Indeed, the Court asked Ms. Rheinheimer question (2) at the December 22, 2016 hearing, pointing out that the name on the incorporation papers was Timothy Vanderhook (the CEO of MySpace.)  Ms. Rheinheimer said that she had "no idea" who Mr. Vanderhook, her client's CEO, was.)  Doc. 67-1, Ex. 1, 1:25-27.

In sum, MySpace wants an emergency stay so it can file papers on behalf of MySpace 2, arguing that MySpace 2 is not liable to Mr. Aguiar.  MySpace says it's an emergency, because it never had a chance to make that argument.  Doc. 68 at 5:15-6:13.  But MySpace deliberately (*see* Doc. 68 at 6:14-16) concealed its corporate owners and all of the changes in ownership that occurred during this case.  And it

1   admits that those owners were monitoring and directing this litigation.  Doc. 68 at

2   6:14-20; Rheinheimer Dec., Doc.62 at ¶¶ 2-5.  MySpace made a deliberate decision to

3   conceal its ownership and name changes; in so doing, it created its own "emergency."

4   **B. Emergency Relief is not Warranted Because MySpace Created Its Own**

5   **"Emergency"**

6   Ex parte applications are "rarely justified," and Defendant's application has not

7   presented any evidence that it constitutes one of those rare occurrences justifying

8   emergency relief.  *Mission Power Engineering Co. v. Continental Casualty Co.*, 883

9   F. Supp. 488, 490 (C.D. Cal. 1995).  Indeed, any "emergency" has been created by

10  Defendant and its counsel.

11  Ex parte relief is only permitted for truly emergency situations.  In order to

12  establish that ex parte relief is necessary, "First, the evidence must show that the

13  moving party's cause will be irreparably prejudiced if the underlying motion is heard

14  according to regular noticed motion procedures. Second, it must be established that

15  the moving party is without fault in creating the crisis that requires ex parte relief, or

16  that the crisis occurred as a result of excusable neglect."  *Mission Power*, 883 F. Supp.

17  at 492; *Int'l Precision Prod., B.V. v. Staco Sys., Inc.*, No. CV13-01831-SJO-EX, 2013

18  WL 12121547, at *1 (C.D. Cal. Dec. 18, 2013) (Otero, J., denying ex parte application

19  under *Mission Power* because of failure to show irreparable prejudice, lack of fault,

20  and likelihood of success on the merits; and noting that party requesting ex parte relief

21  had created the "emergency" by failing to take action at an earlier date).  Here,

22  MySpace has not even *alleged* either of these elements, because it cannot do so.

23  MySpace's application is devoid of any allegation to support emergency relief, and it

24  is clear from examining the facts and procedural history of this case that none exist.[6]

25

26  _____

27  [6] MySpace writes in its brief that wishes to correct "numerous factual inaccuracies" in
    Mr. Aguiar's Supplemental Brief.  Notably, however, MySpace's brief fails to identify
    a single such "factual inaccuracy."  MySpace's letter to counsel, *see* Declaration of

28  Scott Hunter, Ex. F, also failed to identify a single factual inaccuracy in Mr. Aguiar's
    brief.  Instead, the letter asserted that because of a "strict foreclosure" never disclosed
    to Mr. Aguiar or the Court, and not substantiated in the letter, Time, Inc. somehow

BROWN WHITE & OSBORN
A T T O R N E Y S

MySpace has been a party to this lawsuit since long before MySpace 2's inception.  Counsel Jane Rheinheimer appeared in this lawsuit on behalf of "MySpace LLC," both *before and after* the transition from MySpace 1 to MySpace 2.  (Between Nov. 24, 2015 and Dec. 22, 2016, Ms. Rheinheimer appeared and/or filed papers on behalf of "MySpace LLC" at least six times.)  On December 22, 2016—fully 56 days before the present "emergency"—the Court put MySpace on notice that it intended to grant default against "MySpace LLC."  (Only 28 days are required for a regularly noticed motion under this Court's rules.)

Since March 7, 2016, MySpace 2 has been *the only entity in existence* with the name "MySpace LLC."  MySpace's assertion that Mr. Aguiar's Supplemental Brief was "the first time [Mr. Aguiar] stated a claim against [MySpace 2]," Ex Parte Application, Doc. 68, 6:1-3, is therefore neither true nor credible. MySpace was represented by Ms. Rheinheimer at the December 22, 2016 hearing; Ms. Rheinheimer declared under oath that she has informed Mr. Lee, Viant and MySpace regarding all the proceedings, Doc. 62 at 2:11-12; and Mr. Lee states that he and MySpace were carefully monitoring the docket, Doc. 68 at 6:19-20.  Thus, on Dec. 22, 2016 MySpace 2 was aware that the Court was about to enter default against it.  (Indeed, Ms. Rheinheimer told the Court that she had spoken with Mr. Lee that very day.  Doc. 67-1, Ex. 1 at 1:24.)  Yet still it purposely decided not to act—presumably because it still assumed that Mr. Aguiar, a pro se litigant in a prison cell, would never unravel the threads.  It deliberately chose not even to oppose entry of default.  The only "emergency" presented here is that Mr. Aguiar retained counsel, and MySpace realizes that its "hide the ball" litigation strategy is about to backfire.

---

acquired all of MySpace's assets but none of its liabilities.  (MySpace alludes to this same transaction, presumably, at Doc. 68. 5:24, fn. 3, but again declines to give any details.  It is interesting, however, that Time, in its own SEC filings, discusses the Viant acquisition in detail but makes no mention of any "foreclosure." Hunter Decl. Ex. A.)  The law does not condone such after-the-fact game-playing; if MySpace thought it had successfully escaped legal liability in that transaction, it needed to disclose the transaction to the Court and argue the law.  Having concealed it for a year, it cannot now demand a do-over.

PLAINTIFF STEPHEN H. AGUIAR'S OPPOSITION TO MYSPACE LLC'S EX PARTE APPLICATION

BROWN WHITE & OSBORN
ATTORNEYS

That realization is not good cause for ex parte relief, as numerous courts have held.  *See*, *e.g.*, *Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*, No. 13-cv-5693 PSG, 2015 WL 11670155, at *4 (C.D. Cal. July 22, 2015) (denying ex parte application due to, in part, movant's intentional delay that created the crisis); *ESG Capital Partners LP v. Stratos*, No. 2:13-cv-01639-ODW, 2014 WL 1830903, at *2 (C.D. Cal. May 8, 2014) (denying ex parte application because movant created the crisis by failing to timely serve discovery requests); *Hufnagle v. Rino Int'l Corp.*, No. 10-cv-8695 DDP, 2012 WL 6553743 at * 2 (C.D. Cal. Dec. 14, 2012) (denying ex parte application for leave to intervene because proposed intervenor had known the facts supporting the asserted emergency for "over eight months").

Here, it is undisputed that MySpace not only knew the relevant facts (the March 3-7, 2016 transactions), but also actively concealed those facts from Mr. Aguiar and the Court.[7]  There is no good cause for ex parte relief here, because MySpace 2 could have sought to intervene at any time since March 7, 2016.  It chose not to.

## C. MySpace Has Unclean Hands, and Has Forfeited Any "Successor Liability" Arguments by Intentionally and Wrongfully Concealing Its Ownership from the Court

MySpace attempted to game the legal system and trick a pro se litigant into obtaining a default judgment against an empty shell.  As noted, MySpace admits that it deliberately failed to disclose its corporate ownership from the Court and from Mr. Aguiar, in what MySpace admits was a deliberate attempt to keep Mr. Aguiar from asserting claims against MySpace 2 or its corporate parents.  Doc. 68 at 6:14-16. That admission is astonishing: after making a deliberate, strategic decision to conceal its change in ownership, while continuing to litigate the case under its former name; after making a deliberate, strategic decision not to file an answer, not to appear when

_____

[7] And, indeed, possibly from its own attorney, Ms. Rheinheimer.  *See* Doc. 68 at 7:25-28 (suggesting that Ms. Rheinheimer might have been "unaware that her client had changed its name to Legacy Vision.").

ordered to by the Court, and to make multiple misrepresentations to the Court, MySpace 2 now seeks an emergency stay to file a motion to "intervene" in a case it has been litigating for two years. The only "emergency" MySpace 2 identifies is that its attempt to game the system was exposed, because Mr. Aguiar hired a lawyer.

MySpace expressly admits that it could have made all the arguments it seeks to make now, about the relationship between MySpace 1 and MySpace 2, *eleven months ago*. Doc. 68 at 6:14-16. It admits that it *deliberately chose* not to do so in order to prevent Mr. Aguiar from asserting liability against MySpace 2 as a successor entity. *Id*. The briefing on successor liability that MySpace wants to submit now should have been submitted eleven months ago. The reason the issue was not briefed then is that MySpace deliberately failed to disclose its change in ownership, as it was legally required to do. MySpace has unclean hands on the issue of its changes in corporate name and ownership, and should therefore be barred from raising them. "The unclean hands doctrine "closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief." *Precision Instr. Mfg. Co. v. Auto. Maint. Mach. Co*., 324 U.S. 806, 814, (1945); *Wells Fargo & Co. v. Stagecoach Properties, Inc*., 685 F.2d 302, 308 (9th Cir.1982) ("Bad intent is the essence of the defense of unclean hands.") The doctrine of unclean hands bars defendants from asserting a defense when they have acted in bad faith in connection with the defense. *See Jarrow Formulas, Inc. v. Nutrition Now, Inc*., 304 F.3d 829, 841–42 (9th Cir.2002).

In our justice system, a litigant is not permitted to deliberately conceal a fact it is obligated to disclose, in order to gain a strategic advantage; then wait eleven months in hopes that no one notices; then cry "emergency" when it is caught, and demand a second opportunity to make an argument it should have made eleven months earlier.

The obvious motive in all of MySpace's conduct was to prevent Mr. Aguiar from learning about the change in corporate ownership, and thereby prevent him from amending his pleadings to add the new corporate owners as defendants. If, for

14

example, at the outset of the case, MySpace had identified its owner as Interactive Media, Mr. Aguiar could have added Interactive as a defendant.  If MySpace had, six months later, notified the Court of its name change to Viant, Mr. Aguiar could have added Viant as a defendant.  If, one year after that, MySpace had notified the Court of its sale to Time, Inc., Mr. Aguiar could have added Time as a defendant.  But Mr. Aguiar could not do so, because MySpace concealed its corporate owners by not filing any corporate disclosures, ever, throughout this case.  MySpace's brief makes the astonishingly candid admission that MySpace's failure to disclose these changes in ownership was a deliberate strategic choice intended precisely to prevent Mr. Aguiar from naming the new entities under a successor liability theory.

It is the height of chutzpah for MySpace, having actively and deliberately concealed all its parent and successor entities for the past 18 months, specifically in order to keep Mr. Aguiar from naming them, to now cry "emergency" when Mr. Aguiar finally does identify and name them.  What does MySpace seek with its "emergency stay"?  It seeks an "opportunity" to make the precise arguments about successor liability that it could have made at any time throughout this case.  It is an axiom of fraud prosecutions that when a company tries to hide a transaction, and then—when caught—insists that everything was perfectly above-board all along, there is something fishy going on.

In short, MySpace had an obligation to tell Mr. Aguiar and the Court who owned it.  It deliberately chose to violate that obligation, rather than disclose its owners and make its arguments about successor liability.  It is only now that it has gotten caught that it urgently wishes to brief successor liability.

### D. MySpace Cannot Obtain Relief by Attacking Its Attorney

MySpace suggests in several places in its brief that its attorney, Ms. Rheinheimer, made "less than accurate" statements to the Court, or was "unaware" of key facts. Doc. 68 at 6:23-26, 7:25-28.  Specifically, MySpace suggests that Ms. Rheinheimer's appearances and filings on behalf of "MySpace LLC" do not mean that

she was representing MySpace 2; rather, MySpace asserts, Ms. Rheinheimer did not know her client's name.  *Id.*  This assertion is (a) implausible, (b) unsupported by any evidence or declaration, (c) contrary to Ms. Rheinheimer's sworn Declaration, Doc. 62, and (d) irrelevant in any event as a matter of law.

Numerous courts have rejected parties' attempts to obtain relief by pointing the finger at their lawyer's litigation conduct.  That is, as the Ninth Circuit put it, a matter for "malpractice claims."  *Latshaw v. Trainer Wortham & Co.*, 452 F.3d 1097, 1101 (9th Cir. 2006) (affirming denial of motion to correct judgment based on alleged attorney error because "parties should be bound by and accountable for the deliberate actions of themselves and their chosen counsel. This includes not only an innocent, albeit careless or negligent, attorney mistake, but also intentional attorney misconduct."); *Casey v. Albertson's Inc.*, 362 F.3d 1254, 1260 (9th Cir. 2004) ("As a general rule, parties are bound by the actions of their lawyers, and alleged attorney malpractice does not usually provide a basis to set aside a judgment pursuant to Rule 60(b)(1).… This is especially the case where a party has waited a year to complain about the failings of her lawyers."); *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd*, 507 U.S. 380, 397 (1993) (parties are "held responsible for the acts and omissions of their chosen counsel").

The Supreme Court, in *Link v. Wabash R. Co.*, 370 U.S. 626, 633–34 (1962), expressed the governing rule most clearly, in affirming the dismissal of action for failure to prosecute due to attorney's neglect:

> There is certainly no merit to the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client. Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected 634 agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have 'notice of all facts, notice of which can be charged upon the attorney.

370 U.S. at 633-34 (internal citation omitted).

That principle rings true here: MySpace hired Ms. Rheinheimer and directed her conduct.  If MySpace now has a problem with her conduct, it may seek its remedies in a malpractice claim—not in this case.[8]

### E. MySpace's Arguments Regarding Liability Lack Merit

MySpace asks the Court to turn back the clock and give it a second chance to make arguments it deliberately chose not to make nearly a year ago. The lack of merit in those arguments is apparent from MySpace's tactical decision not to make them: if MySpace really believed that the March 2016 transactions created a colorable legal basis for avoiding liability to Mr. Aguiar, *it would have said so then*.  Not only did it *not* say so then, it made that decision because it knew its arguments would lose: "If [MySpace] appeared in the action on behalf of Legacy Vision it would be unable to argue it was not a successor to Legacy Vision's liability in this matter." Doc. 68 6:14-15.  (As noted above, the chutzpah of that sentence, in an ex parte application seeking an emergency stay to file a motion to intervene to make the argument, is breathtaking.)

Leaving aside MySpace's obvious lack of confidence in the legal validity of its "hide the ball" theory, and its decision not to raise it at any point in the case, the theory is fatally flawed.  As Mr. Aguiar detailed in his Supplemental Brief, "MySpace 2" is obviously and demonstrably the continuation of "MySpace 1."[9] What happened

---

[8] It should be noted, of course, that Ms. Rheinheimer has provided a sworn declaration stating that her actions in this case—specifically including MySpace's failure to answer—were at the direction of Mr. Lee.  Mr. Lee has not provided a sworn declaration refuting that contention.  Both Mr. Lee and Ms. Rheinheimer have offered vaguely to provide additional information to the Court, presumably about their communications.  *See* Doc. 68 at 6:23-26; Rheinheimer Decl., Doc. 62 at 2:14-16, Their dispute is, in a word, not Mr. Aguiar's problem.

[9] In his September 21, 2016 letter to opposing counsel in the Altitude case (which is in the same posture as this case) Mr. Lee wrote: "There is no relationship between these entities [MySpace 1 and MySpace 2] other than the common name, MySpace LLC." Sep. 21, 2016 letter from James Lee, Esq. to Tarifa Laddon, Esq.  That statement is 100%, demonstrably false.  As detailed in Mr. Aguiar's Supplemental Brief, MySpace 2 has the same parent (Viant) operates the same business (with no interruptions thereof), has the same office, the same officers, the same attorneys, and the same assets as did MySpace 1.  Mr. Lee has not made that assertion.

17

1  in the first week of March, 2016?  MySpace 1, a company owned by Viant, was

2  acquired by Time, Inc., which bought MySpace along with its purchase of Viant.

3  Time then transferred all of MySpace 1's assets to Viant.  MySpace 1 then changed its

4  name to Legacy Vision.  Four days later, Time[10] created a new LLC called "MySpace

5  LLC" and transferred MySpace 1's assets back into MySpace 2.  MySpace 2's

6  management (the Vanderhooks), counsel, and operations remained the same.  It even

7  kept the same corporate office at Viant's headquarters in Irvine.  Its business

8  operations remained the same.  Its website (its primary business) remained the same.[11]

9        So was there a transfer of assets?  Yes.  Continuation of ownership?  Yes.

10 Continuation of management?  Yes.  Continuation of operations?  Yes.  "MySpace

11 LLC" is not a "proposed intervenor."  **It is what it has always been: the defendant**.

IV.

**CONCLUSION**

14       For the reasons set forth herein, the Court should deny MySpace 2's ex parte

15 request for a stay of proceedings.

16 DATED:  February 17, 2017              Respectfully submitted,

17                                        BROWN WHITE & OSBORN LLP

19                                        By:

20                                        _____
                                               /s/ *Caleb E. Mason*

21                                            CALEB E. MASON
                                              LAURA GLADWIN PAYNE

22                                            Attorneys for Plaintiff
                                              Stephen Handy Aguiar

---

[10] We know that Time was the creating entity because the incorporation papers for MySpace 2 are signed by Lauren Edzol Klein, Time's General Counsel.  Hunter Decl. Ex. D at p.35, and Ex. G.

[11] Indeed, MySpace's brief is an admission to the Court that Time, Inc., is also liable for this judgment under the continuation theory, because Time (MySpace admits) acquired MySpace 1's assets, and Time (MySpace admits) created and operated MySpace 2.  Accordingly, based on MySpace's admissions, Mr. Aguiar will move (in a separate filing) the Court to add Time as an additional defendant on the Default Judgment.